**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

J.R. AUTOMATION TECHNOLOGIES, LLC, A Michigan Limited Liability Company,

                Plaintiff,

v.

VINCE LOWELL and BEN GARVELINK

                Defendants.

**Civ. Act. No. 25-cv-03419**

**Oral Argument Requested**

---

**Defendants' Reply Memorandum of Law in Support of Their Renewed Motion to Dismiss Plaintiff's First Amended Complaint**

**Table of Contents**

**Page(s)**

Introduction ............................................................................................... 1

Reply Argument ........................................................................................ 1

    I.      JRA cannot enforce the MIU Agreement. .............................................. 1

    II.    Defendants' noncompetition and non-solicitation
           obligations expired in 2020. .................................................................. 5

    III.   JRA's claims for breach of the non-solicitation and
           confidentiality provisions do not clear *Iqbal* and *Twombly* .................... 6

    IV.   The noncompetition provision is overbroad under
           Delaware law. ...................................................................................... 8

Conclusion ................................................................................................ 11

## Index of Authorities

**Page(s)**

**Cases**

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*,
No. CV 18-73-LPS, 2019 WL 581618
(D. Del. Feb. 13, 2019) .......................................................................................... 7

*Allied Cap. Corp. v. GC-Sun Holdings, L.P.*,
910 A.2d 1020 (Del. Ch. 2006) ............................................................................ 4

*Arthur J. Gallagher Serv. Co. v. Egan*,
514 F. App'x 839 (11th Cir. 2013) ....................................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 6

*ATAX New York, Inc. v. Canela #1*,
No. 21 CIV. 5916 (JPC), 2022 WL 3018151
(S.D.N.Y. July 29, 2022) ...................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 6

*Churchville v. GACS Inc.*,
973 So. 2d 1212 (Fla. Dist. Ct. App. 2008) ........................................................ 3

*Ellington v. EMI Music, Inc.*,
21 N.E.3d 1000 (N.Y. 2014) ................................................................................. 3

*Gordian Med., Inc. v. Vaughn*,
No. CV 22-319 (MN), 2024 WL 1344481
(D. Del. Mar. 30, 2024) ........................................................................................ 9

*Gory Associated Indus., Inc. v. Griffin*,
397 So. 2d 1054 (Fla. Dist. Ct. App. 1981) ........................................................ 3

*In re Scripsamerica, Inc.*,
634 B.R. 863 (Bankr. D. Del. 2021) .................................................................... 5

*Intertek Testing Servs. NA, Inc. v. Eastman*,
No. 2022-0853-LWW, 2023 WL 2544236
(Del. Ch. Mar. 16, 2023) ...................................................................................... 10

*Kodiak Bldg. Partners, LLC v. Adams,*
   No. 2022-0311-MTZ, 2022 WL 5240507
   (Del. Ch. Oct. 6, 2022) ...................................................................................... 9, 10

*Lyons Ins. Agency, Inc. v. Wark,*
   No. CV 2017-0348-SG, 2020 WL 429114
   (Del. Ch. Jan. 28, 2020) ......................................................................................... 11

*Sunder Energy, LLC v. Jackson,*
   332 A.3d 472 (Del. 2024) ........................................................................................ 10

*Symbiont.io, Inc. v. Ipreo Holdings, LLC,*
   No. CV 2019-0407-JTL, 2021 WL 3575709
   (Del. Ch. Aug. 13, 2021) .......................................................................................... 4

*UtiliSave, LLC v. Miele,*
   No. CV 10729-VCP, 2015 WL 5458960
   (Del. Ch. Sept. 17, 2015) .......................................................................................... 8

## Introduction

JRA's claims fail as a matter of law, and this Court should dismiss JRA's first amended complaint with prejudice.

*First*, JRA cannot enforce the MIU Agreement as a "presumptive party" because it was no longer an "Affiliate" or "Subsidiary" on the date of the alleged breach as those terms are defined in the MIU Agreement. These definitions control the outcome here, but JRA fails entirely to address this argument.

*Second*, even if JRA were a third-party beneficiary, Defendants' noncompetition and non-solicitation obligations expired in December 2020 and there is nothing left to enforce. Those restrictive covenants began to run when JRA was sold to Hitachi in December 2019, and JRA no longer qualified as a "Subsidiary" of JR Technology Holdings under the definition in the MIU Agreement. JRA does not address this argument, either.

*Third*, despite two attempts to plead plausible claims for breach of the non-solicitation and confidentiality pleadings, JRA fails to allege anything more than a conclusory claim for breach of those provisions. That is insufficient, and these claims should be dismissed with prejudice.

## Reply Argument

### I.   JRA cannot enforce the MIU Agreement.

JRA contends that it can enforce the MIU Agreement as a "presumptive party" to the contracts via its status as an "Affiliate" or a "Subsidiary." (Dkt. 51, p. 11). JRA argues: "the plain language of the MIUs extends to and protects [JR Technology]

Holdings' Affiliates and Subsidiaries"—even though JRA was sold to Hitachi in December 2019.  (*Id.*, p. 12).  This is wrong.

As Defendants explained in their opening memorandum, JRA cannot enforce the MIU Agreement because JRA is not an "Affiliate" or a "Subsidiary" of JR Technology Holdings under the definitions incorporated into the MIU Agreement. (*See* Dkt. 49, pp. 4-8).  In response, JRA ignores this argument entirely.

"Affiliate" and "Subsidiary" are defined terms in the MIU Agreement.  Those definitions control whether JRA qualifies as either an "Affiliate" or a "Subsidiary" on the date of the alleged breach.  An "'Affiliate' of any particular Person means (a) any other Person controlling, controlled by or under common control with such particular Person . . ." (LLC Agreement, Article I, p. 2, Dkt. 47-3).   And "'Subsidiary' means with respect to any Person . . . (b) if a limited liability company . . . a majority of company . . . is at the time owned or controlled, directly or indirectly, by such Person . . ." (*Id.*).  The "Subsidiary" definition provides that "references to a 'Subsidiary' of any Person shall be given effect only at such times that such Person has one or more Subsidiaries . . ." (*Id.*, p. 8).

Under these definitions, JRA was neither a "Subsidiary" or an "Affiliate" at the time of the alleged breach.  It was not an "Affiliate" because it is no longer "controlled by" JR Technology Holdings.  It is not a "Subsidiary" because it was not "controlled" by JR Technology Holdings.  (*See* Dkt. 49, pp. 4-8).  JRA does not dispute that it was no longer controlled by JRA Technology Holdings.   In fact, JRA has no response to this argument whatsoever.

2

The arguments that JRA does make are wide of the mark.  For example, *Arthur J. Gallagher Serv. Co. v. Egan*, 514 F. App'x 839, 842 (11th Cir. 2013), does not help JRA.  In *Arthur J. Gallagher*, the corporate "subsidiaries, divisions and affiliated and related companies" were included in the definition of the "Company," and the defendant had agreed not to compete with the "Company."  *Id.* at 840-41.  The contract at issue did not contain any definitions of "affiliate" or "subsidiary" that circumscribed the world of "affiliates."   The contracts at issue here do and those definitions control.

The other cases that JRA cites are irrelevant for similar reasons.  *See Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1005 (N.Y. 2014) (combined with the "present tense language in the agreement," and "[a]bsent explicit language demonstrating the parties' intent to bind future affiliates . . . , the term 'affiliate' includes only those affiliates in existence at the time that the contract was executed"); *Churchville v. GACS Inc.*, 973 So. 2d 1212, 1215-16 (Fla. Dist. Ct. App. 2008) (rejecting the argument that "two entities sharing the same parent are not affiliates"); *Gory Associated Indus., Inc. v. Griffin*, 397 So. 2d 1054, 1055 (Fla. Dist. Ct. App. 1981) (reversing the trial court's exclusion of testimony as to the affiliate status of two corporations under the best evidence rule).

JRA protests that, after the stock sale to Hitachi, "JRA's operations continued largely uninterrupted."  But that does not mean that JRA retained the right to enforce the MIU Agreements as an "Affiliate."  That status is determined by the language of the MIU Agreement.   Under the incorporated definitions—which JRA does not

contest—JRA was no longer an Affiliate or a Subsidiary on the date of the alleged breach.

JRA's extended discussion attempting to distinguish *Symbiont.io, Inc. v. Ipreo Holdings, LLC*, No. CV 2019-0407-JTL, 2021 WL 3575709 (Del. Ch. Aug. 13, 2021), falls short for the same reason. JRA attempts to distinguish *Symbiont.io* on the facts but misses the key point. The *Symbiont.io* court, interpreting the definition of "Affiliate" in the contract, concluded: "The plain language of the Affiliate Definition does not establish a fixed universe of Affiliates based on their status on the effective date." *Id.* at \*29. The definition of "Affiliate" in *Symbiont.io* closely resembles the definition here: "'Affiliate' means, with respect to any Person, any other Person who, directly or indirectly, controls, is controlled by, or is under common control with, such Person." *Id.* at \*28. As in *Symbiont.io*, the definitions of "Affiliate" and "Subsidiary" in the MIU Agreement do not "establish a fixed universe" of affiliates or subsidiaries.

There is likewise no merit to JRA's repeated argument that Defendants' interpretation of the MIU Agreement would lead to an "absurd" result. (*See* Dkt. 51, pp. 2, 14, 15, 16, 18, 19, 20 (referring to Defendants' argument as "absurd"). JRA concedes that the MIU Agreement is interpreted according to its plain and unambiguous language, and JRA no longer qualifies as a "Subsidiary" or an "Affiliate." JRA drafted the MIU Agreements, and JRA entered into a transaction with Hitachi to sell JRA, but not JR Technology Holdings. It could have drafted the documents differently, but it did not. JRA is stuck with the result. *See Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1037 (Del. Ch. 2006) "[T]he separate

legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control."). Far from an "absurd" interpretation, it is a straightforward application of the contract language that excludes JRA from "Affiliate" or "Subsidiary" following the Hitachi sale—a contract interpretation that JRA does not even challenge.

JRA's analogy to the release of claims in a settlement agreement likewise fails. The case JRA cites as an "example of common release language," *see In re Scripsamerica, Inc.*, 634 B.R. 863, 878 (Bankr. D. Del. 2021), contains no reference to any definitions of "Subsidiary" or "Affiliate" that resemble those at issue here. At base, whether JRA is a "presumptive party" is a matter of contract interpretation. JRA is not a "presumptive party" to the MIU Agreement and cannot enforce it.

## II. Defendants' noncompetition and non-solicitation obligations expired in 2020.

JRA likewise largely ignores Defendants' argument that Defendants' noncompetition and non-solicitation obligations expired in 2020, one year after the sale of JRA to Hitachi. In a sole paragraph, JRA contends that the "stock sale could not affect JRA's *vested* right to enforce the restrictive covenants"—calling Defendants' argument "illogical" and an "absurd interpretation." (Dkt. 51, p. 15). But, again, JRA fails to take seriously the plain language of the MIU Agreement and the incorporated definitions.

The noncompetition and non-solicitation provisions apply "during . . . employment with the Company or any of its Subsidiaries and for a period of twelve (12) months thereafter . . ." (MIU Agreement, §§ 5(b), (c), Dkt. 47-3, pp. 7-8)). The

"Company" is JR Technology Holdings, LLC. (*Id.*, p. 1). The clock began to run, therefore, on the date the Defendants were no longer employed with JR Technology Holdings, LLC or any of its Subsidiaries. On December 27, 2019, JRA ceased to be a "Subsidiary" of JR Technology Holdings because JR Technology Holdings no longer "owned" or "controlled" JRA. (*See supra* Section I; Dkt. 49, pp. 4-8). JRA, again, has no response to this. JRA simply does not like the contract language it drafted and agreed to.

JRA nevertheless argues that the restrictive covenants are alive and well because it has "vested" third-party beneficiary rights and, "[f]ollowing the stock sale, Defendants continued to work for JRA[.]" (Dkt. 51, p. 15). But none of that matters because JRA ceased to be a "Subsidiary" on December 27, 2019. Even if JRA had vested rights as a third-party beneficiary under the MIU Agreement, any benefits it holds expired when Defendants' noncompetition and non-solicitation obligations ended. On December 28, 2019, neither JR Technology Holdings nor any "Subsidiary" that it owned or controlled employed the Defendants. Even if JRA were a third-party beneficiary, the restrictive covenants have already run.

## III.    JRA's claims for breach of the non-solicitation and confidentiality provisions do not clear *Iqbal* and *Twombly*.

JRA does not plausibly allege that the Defendants breached the non-solicitation provision or the confidentiality provision. To survive *Iqbal* and *Twombly*, JRA must plead "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

6

JRA failed to plead facts plausibly alleging that Defendants breached the non-solicitation or confidentiality provisions.  JRA contends that Defendants "ignore[e] . . . detailed allegations and inferences that flow from them," (Dkt. 51, p. 25), but JRA fails to cite a single "detailed" allegation supporting its claim for breach.  JRA points only to its generic allegations that Defendants left for Huizenga (¶¶ 7, 48, 49), that "dozens" of other JRA employees also left for Huizenga (¶¶ 8, 50), and that Defendants "breached their contractual obligations (¶¶ 17, 58, 59).  Other "detailed" allegations JRA cites simply cites contract language (¶ 29, 30), or allege facts about JRA's corporate structure (¶ 50).

JRA's only "detailed" allegation of Defendants' soliciting JRA employees states: "Upon information and belief, these [*approximately a dozen*] employees were solicited by one or more of the Defendants[,]" (¶ 50).  JRA's only "detailed" allegation of customer solicitation is similar: "Defendants also solicited JRA's actual and prospective customers, causing some to work with Huizenga rather than JRA." (¶ 51).  *See Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. CV 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) ("allegations lumping multiple defendants together without providing allegations of individual conduct are frequently (as here) insufficient to satisfy the notice pleading standard").  Without any elaboration, JRA alleges that it suffered "extensive damages," (¶ 9; *see also* ¶ 60), including "lost profits, foregone business opportunities, increased operational and replacement costs, and ongoing impairment to its competitive standing in the marketplace, (¶ 53).

JRA contends, relying only on these allegations, that "the Court can easily infer that Defendants breached the restrictive covenants." (Dkt. 51, p. 25). This is inaccurate. In fact, *UtiliSave, LLC v. Miele*, No. CV 10729-VCP, 2015 WL 5458960, at \*10 (Del. Ch. Sept. 17, 2015), the case on which JRA relies, demonstrates how JRA's allegations are deficient. In *UtiliSave*, the court concluded that the plaintiff "failed to plead non-conclusory facts" for the breach of a confidentiality provision— "with one exception." *Id.* The properly pleaded claim alleged that the plaintiff learned from a client (who was identified by name in the complaint) that the defendant had solicited that client and requested to meet with the client. *Id.* Nothing approaching that level of specificity appears anywhere in JRA's first amended complaint.

The other case JRA points to does not help it either. The "questions of fact" left open in *ATAX New York, Inc. v. Canela #1*, No. 21 CIV. 5916 (JPC), 2022 WL 3018151, at \*6 (S.D.N.Y. July 29, 2022), included whether the defendants actually signed the restrictive covenants and the manner in which the contracts were presented to the defendants. *Id.* *ATAX* is not relevant here. JRA's claims for breach of the non-solicitation and confidentiality provisions should be dismissed with prejudice.

## IV.    The noncompetition provision is overbroad under Delaware law.

Finally, the MIU Agreement's noncompetition provision is facially unreasonable and unenforceable as a matter of law. JRA's contrary arguments lack merit.

First, contrary to JRA's argument, Defendants did not waive their right to challenge the reasonableness of the restrictive covenants because that waiver

provision is unenforceable under Delaware law. "[A]n employee's promise not to challenge the reasonableness of his restrictive covenants cannot circumvent this Court's mandate to review those covenants for reasonableness." *Kodiak Bldg. Partners, LLC v. Adams*, No. 2022-0311-MTZ, 2022 WL 5240507, at *6 (Del. Ch. Oct. 6, 2022); *see also Gordian Med., Inc. v. Vaughn*, No. CV 22-319 (MN), 2024 WL 1344481, at *10 (D. Del. Mar. 30, 2024) (same) (citing *Kodiak*).

Second, the geographic scope of the restrictive covenants is facially unreasonable. JRA contends that the geographic scope is reasonable because it "is limited to locations in which Holdings and its Subsidiaries conduct business." (Dkt. 51, p. 22). JRA further argues that it is "reasonable for JRA to restrict Defendants from using [JRA's] Confidential Information to compete with JRA anywhere JRA conducts business or its customers are located." (Dkt. 51, p. 23).

But the noncompetition provision is broader than JRA acknowledges, in multiple ways. Contrary to JRA's assertion, the noncompetition does not simply prohibit using JRA's confidential information to compete with JRA—it broadly prohibits Defendants from, for a period of 12 months, "directly or indirectly, own[ing], manag[ing], operat[ing], control[ling], be[ing] employed by . . . or render[ing] services to any . . . entity . . . engaged in competition with the Company or any of its Subsidiaries or in any other material business in which the Company or any of its Subsidiaries is engaged . . . in any locale or country in which the Company or any of its Subsidiaries conducts business." (MIU Agreement, § 5, Dkt. 47-1, pp. 6-8).

The geographic restriction reaches to cover any entity "engaged in . . . any material business" in which JR Technology Holdings and its Subsidiaries are engaged "in any locale or country" where JR Technology Holdings or its Subsidiaries are engaged.  Recent Delaware cases have refused to enforce similarly broad geographical restrictions.  *See Intertek Testing Servs. NA, Inc. v. Eastman*, No. 2022-0853-LWW, 2023 WL 2544236, at *4 (Del. Ch. Mar. 16, 2023); *Kodiak Bldg. Partners, LLC v. Adams*, No. 2022-0311-MTZ, 2022 WL 5240507, at *12 (Del. Ch. Oct. 6, 2022).  JRA does not address either of these cases.

Nor does JRA address the problematically vague restriction on competing with entities engaged in "any material business" as JR Technology Holdings and its Subsidiaries.  *See Norton Petroleum Corp. v. Cameron*, No. CIV.A.15212-NC, 1998 WL 118198, at *3 (Del. Ch. Mar. 5, 1998) (rejecting a "vague and unwieldy restriction").  Paired with the broad geographic scope, the noncompetition agreement is unreasonable on its face.

Contrary to JRA's argument, the noncompetition provision is far broader than necessary to protect JRA's legitimate business interests.  The expansive provision covers former JRA employees the same, regardless of their role at JRA.  (*See* Dkt. 49, pp. 15-16).  This Court should decline to enforce the noncompetition provision because rendering each Defendants' MIU Agreement reasonable will require the Court to essentially rewrite the provision to address the broad geographical scope and the vague restriction on competing with anyone engaged in "any material business."  *See Sunder Energy, LLC v. Jackson*, 332 A.3d 472, 488-90 (Del. 2024).

In general, Delaware law "frowns on agreements that restrict competition[.]" *Lyons Ins. Agency, Inc. v. Wark*, No. CV 2017-0348-SG, 2020 WL 429114, at *4 (Del. Ch. Jan. 28, 2020) (citation and internal quotation marks omitted).    JRA's noncompetition provision, on its face, does not pass muster.

## Conclusion

The Court should grant Defendants' motion to dismiss and dismiss this case with prejudice.

Dated: January 16, 2026   By */s/Amanda L. Rauh-Bieri*
          D. Andrew Portinga (P55804)
          Amanda L. Rauh-Bieri (P86315)
          MILLER JOHNSON
          45 Ottawa Avenue SW, Suite 1100
          Grand Rapids, MI 49503
          (616) 831-1700
          portingaa@millerjohnson.com
          rauhbieria@millerjohnson.com

          Benjamin D. White
          BLOCH & WHITE LLP
          90 Broad St., Suite 703
          New York, NY 10004
          212-901-3825
          bwhite@blochwhite.com

          *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum of law contains 2,679 words and complies with the word-length limitations in Local Rule 7.1(c).

Dated: January 16, 2026   By */s/Amanda L. Rauh-Bieri*
          Amanda L. Rauh-Bieri (P86315)

11